UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| INNOVA RECOVERY, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. SA-23-CV-00313-XR |
| | ) | |
| HEALTHPCP, INC., VSS MEDICAL TECHNOLOGIES, INC., AND SIGMUND SOFTWARE, INC. | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW, INNOVA RECOVERY, INC. ("INNOVA"), Plaintiff, and alleges as follows:

### I.     PARTIES

1.1     Plaintiff Innova is a Texas corporation that is doing business in Texas. Plaintiff has its principal place of business in San Antonio, Texas. At all times relevant to this suit, Plaintiff was a citizen and resident of Bexar County.

1.2     Plaintiff's Original Complaint incorrectly identified this Defendant as "HealthPCP, LLC". The correct name of this entity is "HealthPCP, Inc." Defendant HealthPCP, Inc. is incorporated in Delaware and does business in Texas. Defendant HealthPCP, Inc.'s principal place of business is located in Illinois, at 8505 W 183rd St Ste G, Tinley Park, Illinois, 60487. Defendant HealthPCP, Inc. (hereinafter "HealthPCP") may be served with process according to the Texas Long-Arm Statute by serving the Texas Secretary of State, Service of Process Division, P.O. Box 12079, Austin, TX 78711, who in turn, can serve Defendant HealthPCP at its principal office

located at **8505 W 183rd St Ste G, Tinley Park, Illinois, 60487**, or wherever else it may be found. *Issuance of citation is requested at this time, and the fee for said issuance has been paid*.

    1.3    Defendant VSS is an Arkansas corporation that is doing business in Texas. Defendant VSS's principal office is located at 1185 N Amberwood Ln, Fayetteville, Arkansas, 72701, United States. Defendant VSS may be served with process according to the Texas Long-Arm Statute by serving the Texas Secretary of State, Service of Process Division, P.O. Box 12079, Austin, TX 78711, who in turn, can serve Defendant VSS at its principal office located at **1185 N Amberwood Ln, Fayetteville, Arkansas, 72701, United States**, or wherever else it may be found. *Issuance of citation is requested at this time, and the fee for said issuance has been paid*.

    1.4    Defendant Sigmund is a Connecticut corporation that is doing business in Texas. Defendant Sigmund's principal office is located at 83 Wooster Heights Rd Ste 210, Danbury, Connecticut, 06810. Defendant Sigmund may be served with process according to the Texas Long-Arm Statute by serving the Texas Secretary of State, Service of Process Division, P.O. Box 12079, Austin, TX 78711, who in turn, can serve Defendant Sigmund at its principal office located at **83 Wooster Heights Rd Ste 210, Danbury, Connecticut, 06810**, or wherever else it may be found. *Issuance of citation is requested at this time, and the fee for said issuance has been paid*.

## II.    JURISDICTION AND VENUE

    2.1    The district court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs. Plaintiff Innova is domiciled in Texas. Defendant HealthPCP is an Illinois limited liability company that is doing business in Texas. Defendant VSS is an Arkansas corporation that is doing business in Texas. Defendant Sigmund is a Connecticut corporation that is doing business in Texas.

2.2	Venue is proper in this Court under 28 USC § 1391(a)(2) because a substantial part of the events giving rise to this claim occurred in Bexar County, Texas.

### III.	GENERAL ALLEGATIONS OF THE FACTS

3.1	Innova is a mental health treatment facility operating out of San Antonio, Texas. Plaintiff's business started in 2016 and has steadily grown year over year since. Today, Plaintiff's business serves clients throughout the state of Texas with multiple locations and has become a leading trauma treatment center in America. More than two dozen clinicians provide therapeutic services in person, online, in groups, and through IOP. In April 2020, Plaintiff further expanded to residential trauma treatment facilities.

3.2	In July of 2021, Innova contracted with Sigmund, a subsidiary of VSS, to help with its collection of healthcare claims and other business solutions. Sigmund's collection efforts, however, were futile, and Innova immediately noticed a decrease in total revenue collected. By November of 2021, Sigmund suggested Innova contract with HealthPCP to perform Sigmund's collection obligations.

3.3	On November 11, 2021, Innova executed an agreement with HealthPCP ("Agreement"). In the Agreement, HealthPCP promised collection of Innova's healthcare claims for 3% of the total receipts collected, with a minimum fee of $1,000.00 per month. HealthPCP also agreed to be responsible for recouping all the unbilled claims from August 2021 to October 2021.

3.4	Additionally, pursuant to the Agreement, HealthPCP had the following obligations:

> **Section 2.1, titled "Patient Billing"**: HealthPCP shall submit on a timely basis all bills and necessary documentation required by patients and payors in order to obtain payment in connection with CLIENT's delivery of health care service.
>
> **Section 2.1.1.2**: Process billing to Medicare, Medicaid, and such other third party insurance carriers or third party payors, using proper forms and required coding pertaining to diagnosis (ICD-9

and procedure (CPT-4) coding, as edited by the claims clearinghouse, that has been provided by CLIENT;

**Section 2.1.2**: To collect payments on accounts receivable generated by such billings on CLIENT's behalf from patients and payors, including where deemed appropriate by HealthPCP and approved in advance by CLIENT, settling and compromising claims, assigning such accounts receivable to a collection agency or the bringing of legal action against a patient or payor on CLIENT's behalf;

**Section 2.1.2.1**: To provide follow up collection services using telephone or letter for nonpayment by third parties after forty-five (45) days and up to one hundred twenty (120) days from the date of service;

**Section 2.1.2.3**: To seek payment of the outstanding account balances exceeding $9.99 by monthly statements, telephone, or whenever possible, by form letters approved by CLIENT or by legal counsel;

**Section 2.1.3.1, titled "Collection of Fees"**: HealthPCP shall, on behalf of CLIENT, bill patients and collect the professional fees for treatment services rendered by CLIENT and for all other professional services rendered by CLIENT.

**Section 2.2.1**: Maintenance of scheduling module through the software system, including the addition of new providers and assistance with template creation.

3.5     Under the aforementioned provisions, Defendant HealthPCP had a contractual obligation to timely send bills, submit claims, and collect for all of Innova's healthcare services. The Agreement with Defendant HealthPCP would only exacerbate Plaintiff's billing and collection problems.

3.6     Defendant HealthPCP failed to perform its obligations under the Subject Agreement from November 2021 to February 2022. Upon information and belief, in February 2022, Plaintiff recognized that despite having almost triple the number of patients compared to the same month in the previous year, its collected revenue was half of comparable months. When

Innova reached out to HealthPCP, VSS, and Sigmund, the severity of Innova's concerns were consistently downplayed and brushed aside.

3.7    Defendant HealthPCP admitted it implemented software that was "buggy" and would constantly submit claims improperly. When Innova put HealthPCP on notice of this issue, HealthPCP resorted to manually submitting claims and appealing claims that were improperly submitted. In April 2022, Innova sent an email to Defendant HealthPCP detailing its failure to perform its contractual obligations to the detriment of Plaintiff's business:

> Let me tell you where we are. We have brought in HALF- or less than half... of what we should be since July. I have had to dip into my savings month after month to make payroll. I now have enough left for ONE more payroll. My business could literally go bankrupt because we switched to Aura and no one seems to know how to make billing work. This is beyond serious. I dont know how to make that any more clear. We cannot "wait and see what pays" or "have a good feeling" that it is right. We need money. In the account. Now. It is payday again. That leaves 2 weeks to get in hundreds of thousands of dollars that we are OWED for services we provided or I cannot make payroll.

*Illustration No. 1*

3.8    Objective evidence available to both parties indisputably shows that many claims were: (1) never submitted; (2) rejected; (3) not resubmitted; and/or (4) never collected. Defendant HealthPCP misrepresented that it was following up with the outstanding claims. The evidence clearly shows that many claims were rejected due to improper billing codes and never resubmitted.

3.9    Upon information and belief, by May of 2022, Plaintiff had 10,000 outstanding claims uncollected, approximately 9 months after switching from Sigmund to HealthPCP.

> Hello all! As we partner together to problem solve these issues, I want to ask for a few things. Given that it has been 9 months since our switch to Sigmund and we are no better off and still have over 10,000 outstanding claims- there must be a point at which we say we cannot continue to dig deeper into this hole. We really need all heads to partner together and figure out the following:
> 1. How do we fix BCBS PhP/Res claims so that they process correctly the first time and they pay within 30-60 days as expected?
> 2. How do we fix BCBS 90837 claims so they process correctly and they process within 30 days tops as expected?
> 3. How do we fix Superior claims so they process correctly the first time?
> 4. How do we fix Tricare PhP/Res claims so they process correctly and pay the first time?
> 5. How do we fix Tricare 90837 claims to process immediately as expected?
> 6. How do we fix Ambetter claims to process the first time as expected?
> 7. How do we fix Humana Res/PhP claims to process the first time?
>
> I have brainstormed all the ways to address these issues... hand billing in each system for now to resolve back issues, hard- coding differently for future claims... I am out of ideas. I would really love for you all to work with your team of experts to analyze these issues and see what you can come up with to solve the problem permanently. Lets discuss your solutions on Friday in our meeting.

*Plaintiff's F*

*Illustration No. 2*

3.10     Plaintiff's issues were never resolved, and the bugs in the software have never been fixed. Upon information and belief, Defendant HealthPCP failed to collect at least 1.7 million dollars' worth of Innova's healthcare claims. Innova was required to hire third parties and devote additional resources to the investigation and collection of outstanding claims. As a result of HealthPCP's breaches of the Agreement, Plaintiff has suffered substantial damages.

## IV.     CAUSES OF ACTION

**A.     Defendant HealthPCP—Breaches of Contract**

4.1     In November of 2021, Plaintiff and Defendant HealthPCP entered into a services agreement. Defendant HealthPCP offered to timely submit and collect Plaintiff's healthcare services claims. In return, Plaintiff was to pay Defendant HealthPCP 3% of its total collections each month. Plaintiff accepted this offer and acted in reliance upon the Agreement.

4.2     The provisions of the Agreement aforementioned in Section 3.4 are herein incorporated. Under these provisions, HealthPCP has a clear and unequivocal obligation to collect any and all of Innova's healthcare services claims. HealthPCP has an obligation to collect on the claims using the proper procedures, forms, and coding, as required by Medicare, Medicaid, and other third-party payors. HealthPCP further has an obligation to follow up on the claims after proper submission and to diligently pursue the collection of those claims.

4.3     Defendant HealthPCP breached the Agreement by failing to timely submit, follow up on, and collect Plaintiff's healthcare claims. As a result of these breaches, Plaintiff has suffered

damages including, but not limited to, out-of-pocket expenses, attorney's fees, actual damages, and court costs.

**B.     Defendant HealthPCP — Promissory Estoppel**

4.4     In the alternative, Plaintiff pleads for recovery under the doctrine of promissory estoppel. Defendant HealthPCP made a promise to timely submit and collect on Innova's healthcare claims. HealthPCP breached this promise when it failed to submit claims and collect on those claims. HealthPCP was aware of Plaintiff's reliance on its collection efforts and should have reasonably expected Plaintiff to substantially rely on its promises.

4.5     As a result of Defendant HealthPCP's acts and/or omissions, Plaintiff has suffered a detriment in that Plaintiff has not received compensation for the healthcare services it performed.

**C.     Defendant HealthPCP—Fraud**

4.6     Defendant HealthPCP made representations to Plaintiff that it would timely submit, follow up on, and collect on Plaintiff's healthcare claims. During the term of the Agreement, HealthPCP represented to Plaintiff that it was following up on Plaintiff's submitted healthcare claims. HealthPCP additionally represented that it would collect on the healthcare claims that Sigmund was obligated to collect under the previous agreement.

4.7     These representations were material to the Agreement.

4.8     Defendant HealthPCP made these representations either with the knowledge that it would not conform to the terms of the Agreement, or recklessly and without fully intending to conform to them.

4.9     Plaintiff reasonably relied on these representations when Innova executed the Agreement with HealthPCP. By relying on HealthPCP's representations, Plaintiff missed other business opportunities and the collection on its claims.

**D.      Defendant HealthPCP—Breach of Duty of Good Faith**

4.10    Defendant HealthPCP breached the implied duty of good faith and fair dealing owed to Plaintiff under the Agreement. Defendant HealthPCP knew or should have known that not timely submitted and/or collecting on Innova's healthcare claims would substantially harm Innova's interests. Defendant HealthPCP's conduct was a proximate and/or producing cause of Plaintiff's injuries and damages.

**E.      Defendant VSS, Sigmund, and HealthPCP—Civil Conspiracy**

4.11    Sigmund and HealthPCP are both subsidiaries of VSS. Innova initially contracted with Sigmund for the collection of its healthcare claims. Upon information and belief, after hundreds of thousands of dollars' worth of claims were uncollected, Sigmund recognized it would be unable to perform its obligations and suggested Innova contract with HealthPCP for the collection of its claims. Before signing the contract, HealthPCP represented to Innova that it would collect the claims Sigmund failed to collect.

4.12    Upon information and belief, before execution of the contract, each Defendant knew HealthPCP would be unable to fulfill the contractual terms of the contract. Upon information and belief, each Defendant formed the intent to assist the other in ignoring and concealing their fraud and breaches.

4.13    In furtherance of the conspiracy, Defendants VSS, HealthPCP, and Sigmund (and their employees) ignored Innova's request for collection reports and pleas for performance under the contract. Upon information and belief, HealthPCP's and Sigmund's inevitable breaches were obvious to VSS at the execution of the Agreement.

4.14    Defendants objectively breached the Agreement and violated their common law duties.

4.15 Defendants' conspiracy was the proximate cause of Plaintiff's injuries and damages.

4.16 In consummating their conspiracy, Defendants acted fraudulently against Plaintiff, in concealing HealthPCP's breach of the Agreement and/or breach of the standard of care. Accordingly, pursuant to Sections 41.001 et seq. of the Texas Civil Practice and Remedies Code, Plaintiff requests punitive damages from each Defendant in an amount to be determined by the fact finder.

## V. DAMAGES

5.1 As a result of Defendant HealthPCP's breaches of the Agreement and Defendants' torts, Plaintiff seeks monetary damages to compensate them for the following elements of damages:

(a) Actual and economic damages;

(b) Reasonable attorneys' fees;

(c) Out-of-pocket expenses;

(d) Lost Revenues;

(e) Lost Profits;

(f) Lost Business Opportunities;

(g) Loss of Good Will;

(h) Exemplary damages;

(i) Liquidated and unliquidated damages;

(j) Court Costs.

## VI. PRE-JUDGMENT AND POST JUDGMENT INTEREST

6.1     Plaintiff seeks pre-judgment and post-judgment interest at the highest rate provided by law.

## VII.     RESERVATIONS OF RIGHTS

7.1     Plaintiff reserves the right to prove the amount of damages at trial.  Plaintiff reserves the right to amend their Petition and add additional counts and/or parties as discovery continues.

## VIII.     CONDITIONS PRECEDENT

8.1     Pursuant to Rule 54 of the Texas Rules of Civil Procedure, all conditions precedent to Plaintiff's rights to recover and Defendants' liability have been performed or have occurred.

## IX.     DEMAND FOR BENCH TRIAL

9.1     Plaintiff requests a trial to the bench and shall tender any applicable fee.

## IX.     PRAYER

10.1     WHEREFORE, Plaintiff requests this Court issue citation to Defendants to answer, and upon final trial of this matter, enter judgment against the above-named Defendants for compensatory damages in an amount in excess of $75,000, together with pre- and post- judgment interest, attorneys' fees, costs and such other and further relief as the Court deems just and equitable.

>                                 Respectfully submitted,
>
>                                 **PARDO & HOMAN, P.C.**
>
>                                 _____
>                                 **Joel B. Pardo**
>                                 State Bar No. 24083617
>                                 joel@lawofficesofjoelpardo.com

*Plaintiff's First Amended Complaint*

**Nicholas A. Homan**
State Bar No. 24083194
nick@pardohoman.com
3401 Allen Parkway, Suite 101
Houston, TX 77019
(281) 584-6670 (telephone)
(281) 404-9230 (facsimile)

### VERIFICATION

I, Joel B. Pardo, do hereby certify that the facts and allegations in the foregoing Petition are true and correct to the best of my knowledge.

_____
Joel B. Pardo

*Plaintiff's First Amended Complaint*