**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| INNOVA RECOVERY INC. | : | CIVIL CASE NO. |
|     Plaintiff, | : | 3:23-CV-1264 (JCH) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| HEALTHPCP, INC., VSS MEDICAL | : | |
| TECHNOLOGIES, INC., AND SIGMUND | : | |
| SOFTWARE, INC., | : | MARCH 24, 2026 |
|     Defendant. | : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT (DOC. NO. 146)**

**I.      INTRODUCTION**

The plaintiff, Innova Recovery, Inc. ("Innova"), brought suit against HealthPCP, Inc. ("HealthPCP"), VSS Medical Technologies, Inc. ("VSS"), and Sigmund Software, Inc. ("Sigmund") (together "defendants"), alleging multiple claims including breach of contract, fraud, promissory estoppel, civil conspiracy, and violations of the Connecticut Unfair Trade Practices Act ("CUTPA"). See Second Amended Complaint ("Amd. Compl.") (Doc. No. 33).

Before the court is the defendants' Motion for Summary Judgment on all counts of the Complaint as well as the defendants' counter-claim for breach of contract. See Defendants' Memorandum of Law in Support of their Motion for Summary Judgment ("Mot. SJ") (Doc. No. 146-1). The plaintiff opposes the Motion. See Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pltf's Opp'n") (Doc. No. 153-1). The defendants replied in support of their Motion. See Defendants' Reply in Support of their Motion for Summary Judgment ("Def's Reply") (Doc. No. 159).

1

For the reasons stated below, the court denies the Motion for Summary Judgment.

## II.     BACKGROUND[1]

Innova is a company based in Texas; it consists of several mental health facilities and provides online mental health services as well.  See Plaintiff's Local Rule 56(a)(2) Statement of Facts in Opposition to Summary Judgment ("SOF") (Doc. No. 153-2) at ¶ 1.[2]  Sigmund sells and services Software-as-a-Service ("SaaS") products, which includes products that facilitate medical providers when billing insurance companies and others for services rendered.  Id. at ¶ 3.  HealthPCP is a billing and collections company serving medical providers.  Id. at ¶ 4.  VSS is a company with interests in Sigmund and HealthPCP.  Id. at ¶ 5.  Sigmund is incorporated in Connecticut; HealthPCP is incorporated in Delaware.  Id. at ¶ 6.

Innova signed contracts with Sigmund and HealthPCP.  Id. at ¶ 9.  In May 2021, Innova and Sigmund signed a contract for SaaS for a three-year term.  ("Sigmund Contract").  Some of Sigmund's offered services are set forth in the Sigmund Contract. Id. at ¶ 15.  The Sigmund Contract places some obligations on Innova regarding its ability to provide services based on Innova's information.  Id. at ¶ 17.  There are sections regarding Customer Responsibilities, obligations, and software responsibilities in the Sigmund Contract.  Id. at ¶¶ 18-21.  There is an acceptance period which allows sixty days for a consumer to identify deficiencies for rejection or requested modifications

---

[1] The facts presented in this part of the court's Ruling are drawn from the parties' undisputed statement of facts, as presented in their Rule 56 statements.  The court cites primarily to the plaintiff's 56(a)(2) Statements which contain a reproduction of each numbered paragraph from the defendants' Local Rule 56(a)(1) Statement, as well as the nonmoving party's admissions and denials.

[2] The Local Rule 56(a)(1) Statement includes a significant number of "facts" not material to the defendants' Motion.  See D. Conn. L. Civ. R. 56(a)(1).

of the SaaS.  Id. at ¶¶ 22-24.  The Sigmund Contract could only be amended by a writing signed by both parties.  Id. at ¶ 31.

Innova and HealthPCP also executed a contract for services.  Id. at ¶ 33.  The effective date of the commencement of HealthPCP's services was November 10, 2021.  Id. at ¶ 38.  Innova agreed to provide certain information for patient billing to HealthPCP.  Id. at ¶ 39.  The HealthPCP contract had a term of one year.  Id. at ¶ 44.  Under the contract, both parties have the right to cure a material breach.  Id. at ¶ 46.

Shortly after adopting the software, Innova believed the software was not working as advertised and thus engaged with Sigmund through emails and troubleshooting.  Id. at ¶¶ 53-57.  An employee from Sigmund communicated with Innova in an attempt to resolve the issues Innova experienced with the software.  Id. at ¶ 53.  There is significant disagreement about the details, but Innova and Sigmund each claim they were doing what they could do to assist in making the software run properly.  Id. at ¶¶ 53-57.   After November 1, 2021, Dr. Kasi Howard, Innova's founder and chief executive, began infusing personal funds into Innova.  Id. at ¶ 58.  In July of 2022, Innova terminated HealthPCP.  Id. at ¶ 60.  There was a period of transition and access to the Sigmund system to process claims that arose from past events ("legacy claims").  Id. at ¶ 61.

## III.    LEGAL STANDARD

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016).  If the moving party satisfies this burden, the nonmoving party

3

must come forward with evidence demonstrating that there is indeed "a genuine issue for trial." See Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).  Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment.  See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).  In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." See LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

## IV.    DISCUSSION

Innova alleges in its Amended Complaint that it engaged the defendants' services with Sigmund, but Sigmund's software did not improve Innova's billing.  See Amd. Complaint at 3.  After months of troubleshooting, Innova claims it was actively encouraged by Sigmund employees to engage another company, HealthPCP, to handle billing and collections.  Id. at 4-5.  Innova asserts that, together with VSS, HealthPCP and Sigmund, are a tripartite symbiotic service model, operate to bill, submit, and collect medical payment from third parties, and that the companies improperly colluded and breached their contract with Innova.  Id. at 4-5.

A.    Innova has standing for its claims against VSS

Innova brings claims against three companies – HealthPCP, VSS, and Sigmund. See Amd. Complaint at 1-2.  The defendants argue that Innova has no standing for any claim against VSS.  See Mot. SJ at 21.  They argue that Innova has no evidence to

4

substantiate that it suffered any injury traceable to Sigmund or HealthPCP; therefore VSS, a parent company, is even more attenuated from any alleged harm. Id. The defendants argue that VSS was not a party to any contract with Innova. Id. Additionally, the defendants contend that Innova does not have standing to sue by virtue of VSS sharing employees with the other two companies. Id. at 22.

Innova argues that VSS owns and operates Sigmund and HealthPCP as its alter-egos, with overlapping staff, executives, and facilities. See Pltf's Opp'n at 1. Innova contends that the three companies act as a tripartite model. Id. at 21.

There exists a material dispute of facts relating to whether the companies indeed act as a tripartite model. The defendants admit that there are overlapping employees among the three companies. See SOF at ¶ 7. Innova asserts that the relationship is more complicated, with supervisors holding joint titles and executives representing that HealthPCP acts as Sigmund's revenue cycle billing department. Id. Additionally, there are material disputes about the contract itself. The defendants argue that the contracts are between certain parties, not including VSS, yet admit that VSS's logo appeared on the top of the HealthPCP contract. See Mot. SJ at 21. Furthermore, Innova asserts that the HealthPCP contract was presented as a "VSS contract" to obtain specialized back-office billing services. See SOF at ¶ 10. There exist material issues of fact on Innova's claimed tripartite model of the defendants. Thus, summary judgment is denied regarding Innova's "standing" to sue VSS.[3]

B.     Breach of Contract against VSS, Sigmund, and HealthPCP

---

[3] It is the court's view that "standing" is the wrong framework for analysis, but regardless, there are material issues of fact as to the cause of action to pierce the corporate veil asserted by Innova against VSS.

The defendants spend much time arguing that Innova is unable to prove breach of contract.  The defendants argue that Innova offers no admissible facts or testimony which would establish causation.  See Mot. SJ at 23.  Similarly, the defendants attack Innova's expert witness's credibility[4] by saying the expert should be excluded, and they are filing a separate motion.[5]  Id. at 24-25  The defendants then attack the spreadsheets utilized by the experts.  Id.

Innova counters that the defendants have failed to establish that there are no genuine disputes of material fact.  See Pltf's Opp'n at 6.  Innova argues there is evidence that the defendants acted as a cohesive unit as part of the defendants' tripartite service model sold to Innova.  Id. at 7.  Additionally, Innova argues that Sigmund and VSS provided defective billing services.  Id.

Under Connecticut law, the elements of a breach of contract claim are: (1) formation of an agreement; (2) performance by one party; (3) breach of the agreement by the other party; and (4) damages.  See Michel v. Yale University, 547 F.Supp.3d 179, 188-189 (D.Conn. 2021).

There exist material disputes regarding elements 2 and 3 for both the HealthPCP and Sigmund Contracts.  All signing parties admit they signed a contract, thus establishing the first element.  See SOF at ¶¶ 9, 12, 33.  Each party argues that the other did not perform properly.  Id. at ¶¶ 17-26; Plaintiff's Additional Material Facts ("PAMF") (Doc. No. 153-2) at ¶¶ 9,10.  Innova argues Sigmund failed to perform by providing a defective software product.  PAMF at ¶¶ 10,15.  Innova argues HealthPCP

---

[4] Credibility is not a word that should appear in a motion for summary judgment.

[5] As of 24 March, no new motions to preclude had been filed regarding the expert.  Thus, the court will consider any admissible opinions of this expert.

did not use billing codes to maximize profits.  Id. at ¶ 23.  The defendants argue that Innova failed to provide the necessary and correct information, which information is required for the claims to be collected.  See SOF at ¶ 56.  There clearly exist material issues of fact regarding breach of the contract.  Thus, the defendants' Motion for Summary Judgment on Innova's breach of contract is denied.

C.  Promissory Estoppel claim against HealthPCP and Sigmund

The defendants argue that they are entitled to summary judgment on Innova's promissory estoppel claim.  See Mot. SJ at 30-33.  Specifically, HealthPCP and Sigmund argue that the promise to submit timely and collect upon Innova's healthcare claims was qualified.  Id. at 31.  Additionally, they argue that the HealthPCP contract disclaims "the guarantee of any particular result."  Id. at 32.

Innova argues that the defendants' argument is unfounded.  See Pltf's Opp'n at 11.  It asserts that the defendants promised to timely submit and collect upon Innova's healthcare claims.  Id. at 12.  Innova claims that HealthPCP and Sigmund were aware of Innova's reliance on their collection efforts and should have reasonably expected Innova to substantially rely on their promises.  Id.

The doctrine of promissory estoppel provides that "any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury."  See Chotkowski v. State, 240 Conn. 246, 268 (1997).  There exist issues of material fact regarding both elements which prevent the court from granting summary judgment for the defendants on this count.

Under the first element, the defendants and Innova agree that there was a contract with both Sigmund and HealthPCP.  See SOF at ¶¶ 13, 33.  However, there is significant dispute regarding what those contracts and subsequent communications provided for.  See SOF at ¶¶ 13-42.  Innova points to marketing language in the HealthPCP contract with claims to combine Sigmund's software services with the billing division of HealthPCP to offer a combination of services in a single "service package." Id. at ¶ 33.  Furthermore, the defendants argue that the two contracts placed responsibility solely on Innova for the collecting, inputting, and coding of patient data. Id. at ¶¶ 21, 41, 42.  However, Innova argues that the written contracts are not fully inclusive of all the duties owed and argues that the subsequent communications show a better picture of the obligations.  Id. at ¶¶ 21, 31.  Innova relies on emails in which "Sigmund/VSS'" acknowledged improper onboarding issues on their backend and missed diagnosis codes as well as coding errors in the software itself, all of which Innova argues created a situation making it impossible for Innova to fulfill its obligations. Id. at ¶¶ 21, 32, 42.

There exist significant issues of material fact regarding element one of promissory estoppel, which prevents the grant of summary judgment.  Therefore, summary judgment as to the promissory estoppel claim is denied.

D.    Fraud Claim against all defendants

Innova has pled a claim of fraud against the defendants, alleging that they made false representations regarding their ability to provide comprehensive billing and collection services to induce Innova into a business relationship.  See Amd. Compl. at 8. The defendants move for summary judgment, arguing that Innova cannot prove fraud by the required standard, specifically contending that their representations were simply

expressions of optimism, and there is no evidence they knew the statements were untrue.  See Mot. SJ at 33-34.

Under Connecticut law, a fraud claim requires "(1) that the representation was made as a statement of fact; (2) that it was known to be untrue by the party making it; (3) that it was made for the purpose of inducing the other party to act upon it; and (4) that the party to whom the representation was made was in fact induced thereby to act to his injury."  See McCullough v. World Wrestling Ent., Inc., 172 F. Supp. 3d 528, 560 (D. Conn. 2016), aff'd in part, appeal dismissed in part sub nom. Haynes v. World Wrestling Ent., Inc., 827 F. App'x 3 (2d Cir. 2020) (quoting Leonard v. Comm'r of Revenue Servs., 264 Conn. 286, 296 (2003)).

The defendants argue that the record contains no evidence of fraud, and that they acted in good faith to resolve Innova's problems.  See Mot. SJ at 34.  They contend that any failures in the collection of data were the result of Innova's own errors in providing the required data.  Id. at 1.  Innova, in response, argues that defendants represented the companies would maximize profits and provide an expertly trained and experienced medical collection and billing division to offer the "most effective, efficient, and transparent service package available."  See SOF at ¶ 33.  Additionally, Innova argues that the software management system was set up incorrectly.  See PAMF at ¶ 26.  Innova also argues that the defendants were aware of deficiencies in their system. See SOF at ¶¶ 21, 32.  Innova contends that the defendants "suggested that the solution to Sigmund's/VSS's software deficiencies which was causing Innova's revenue to decrease was for Innova to engage another VSS service by contracting with HealthPCP."  See PAMF at ¶ 16 (emphasis in original).

There exist genuine issues of material fact as to the fraud claim.  The first element of fraud requires statements of fact.  See McCullough, 172 F. Supp. 3d at 560.  Whether the defendants' statements were factual misrepresentations or simply expressions of optimism is a question for a jury to decide.  A reasonable jury could conclude that the defendants knowingly misrepresented.

There exist disputes of material fact regarding the first element of fraud.  There is no need to consider the defendants' other arguments.  Therefore, the Motion for Summary Judgment as to the fraud claim is denied.

E.     CUTPA claim against all defendants

Innova brings a claim under CUTPA, alleging that the defendants engaged in unfair or deceptive acts in trade or commerce.  See Amd. Complaint at 9-11.  The defendants moved for summary judgment arguing that Innova has failed to come forward with evidence to create any issues of material fact.  See Mot. SJ at 37.  Specifically, the defendants argue that the record reveals no unfair trade practice, but simply that Innova entered into two separate contracts and was disappointed by the results.  Id. at 38.  They contend that a breach of contract without aggravating, immoral, or unscrupulous conduct, does not constitute a CUTPA violation.  Id. at 37.  Additionally, the defendants assert they underwent significant efforts and time to address Innova's complaints.  Id. at 39.

Innova argues that the defendants unlawfully represented that they would provide complete revenue cycle management, while knowing of the deficiencies of the defendants' product and failing to provide the agreed upon services.  See Pltf's Opp'n at 19.  Innova offers evidence that the software was set up incorrectly and was below

10

industry standards, which Innova asserts led to serious revenue loss.  See PAMF at ¶¶ 26, 28.

Under CUTPA, a plaintiff must show "that (1) the defendant engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce . . . [and] (2) [they have] suffered an ascertainable loss of money or property as a result of the defendant's acts or practices."  See Connecticut Fair Hous. Ctr. v. Corelogic Rental Prop. Sols., LLC, 369 F. Supp. 3d 362, 380 (D. Conn. 2019) (citing Artie's Auto Body, Inc. v. Hartford Fire Ins. Co., 287 Conn. 208, 217 (2008)).

There exist material issues of fact that prevent the grant of summary judgment because the parties fundamentally disagree on the nature of the business practices at issue.  Innova identifies emails showing the Sigmund/VSS staff were aware of the improper onboarding issues on Sigmund's backend, yet continued to solicit Innova's business for additional billing services. See SOF at ¶ 8.  Furthermore, Innova has come forward with evidence that the defendants' failure to timely bill and collect millions of dollars in claims resulted in significant revenue losses. See PAMF at ¶ 45.  Finally, Innova admits it signed two contracts, but denies that the three defendants were separate entities given that the defendants are indivisible and work cohesively in a tripartite service model. See SOF at ¶ 9.  Innova has come forward with evidence creating an issue of material fact as to its alter ego theory. See PAMF at ¶¶ 5,6,7,14,16.  In addition, the fraud claim remains, which clearly is a basis for a CUTPA claim.

There exist material issues of fact for the jury such as whether misrepresentations occurred and whether it was unfair under CUTPA as well as

11

whether the businesses were a tripartite model and whether fraud by the defendants will be found.  Therefore, summary judgment in regard to the CUTPA claim is denied.

      F.      <u>Civil Conspiracy claim against all defendants</u>

Innova asserts a claim for civil conspiracy against all three defendants, arguing that the companies acted in concert to commit underlying tortious acts, including fraud and CUTPA violations.  <u>See</u> Pltf's Opp'n at 15.  The defendants move for summary judgment arguing that Innova is unable to sustain its underlying fraud claim and, therefore, the civil conspiracy claim must fail as a matter of law.  <u>See</u> Mot. SJ at 36.  The defendants contend that there is no evidence in the record of the defendants acting together to achieve a shared goal, maintaining that each company had a separate business relationship for separate service. <u>Id</u>.

Under Connecticut law, civil conspiracy is not an independent cause of action.  "Rather, the action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself . . . .  Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort."  <u>See</u> <u>Master-Halco, Inc. v. Scillia Dowling & Natarelli, LLC</u>, 739 F. Supp. 2d 109, 113 (D. Conn. 2010).  To succeed on a claim of civil conspiracy, a plaintiff must prove the following elements: "(1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff."  <u>See</u> <u>Macomber v. Travelers</u> <u>Prop. & Casualty Corp.</u>, 277 Conn. 617, 635-36 (2006).

There exist genuine issues of material fact as to whether the defendants acted independently or as a singular, tripartite model.  Innova has produced evidence which

disputes the defendants' argument of separate and distinct entities.  For example, the VSS Medical Technology logo appears on the top of the right corner of every page of the HealthPCP contract.  See PAMF at ¶ 7.  The defendants share the same executive officers and employees who are paid a single salary for work performed across multiple companies.  See SOF at ¶ 5; PAMF at ¶ 3.  Harry Menesis, COO of Sigmund, serves as a supervisor for both VSS and HealthPCP.  See SOF at ¶¶ 7, 12.  Sigmund's Vice President represented to Innova that HealthPCP functioned as Sigmund's revenue cycle billing department.  See SOF at ¶¶ 7, 55; PAMF at ¶ 3.

The parties also fundamentally disagree about the purpose behind the defendants coordinated communications.  Innova argues that, after Sigmund's software caused a significant decrease in revenue, the Vice President of Sigmund's Sales team, suggested the only solution was for Innova to engage another VSS service – – HealthPCP.  See SOF at ¶ 16.  Innova argues this was a self-serving and calculated move to trap them within the VSS system, and the defendants knew that system was incapable of performing the services.  See SOF at ¶ 15.  The defendants argue that these representations were made in good faith and represented expressions of optimism about business improvements.  See Mot. SJ at 34.

Because a reasonable jury could find that the defendants acted together with a shared goal to induce Innova into a series of contracts through misrepresentation and because the underlying fraud and CUTPA claims remain viable, summary judgment is denied as to the civil conspiracy claim.

G.    Alter Ego/Veil Piercing claim against all defendants

The defendants argue that the corporate veil exists and is only pierced in exceptional circumstances.  See Mot. SJ at 40.  The defendants assert that Innova is

13

attempting to accomplish a "horizontal veil piercing" and that Connecticut law highly disfavors such a reverse piercing of the corporate veil.  Id. at 40-41.  According to the defendants, the three businesses are separate entities, even if they share some employees.  Thus, the Connecticut three-part test regarding reverse piercing would fail. Id.  Therefore, the defendants argue that summary judgment is appropriate.

Innova asserts that the defendants miscategorized its argument and instead it is asking for traditional veil piercing.  See Pltf's Reply at 20.  Innova argues that the defendants, instead of forming three separate companies, are a tripartite model, and therefore, under Connecticut law, the court should ignore such a legal fiction.  Id. at 21.

The Connecticut Supreme Court has endorsed two tests to determine whether piercing the corporate veil is appropriate: the instrumentality and the identity tests.  See KLM Indus., Inc. v. Tylutki, 75 Conn. App. 27, 32 (2003).  The plaintiffs alleged a traditional veil piercing claim.  See Pltf's Reply at 21; Amd. Complaint at 11-12.  For the purposes of the Motion for Summary Judgment, the court will examine the identity test.

The identity test has been stated as follows:

If plaintiff can show that there was such unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identify would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.

Angelo Tomasso, Inc. v. Armor Const. & Paving, Inc., 187 Conn. 544, 554 (1982). There are material issues of fact regarding these elements.  Innova disputes that VSS is a parent company merely holding interests.  See SOF at ¶ 5.  Innova claims that the companies act as alter egos, with overlapping staff, executives, and facilities.  Id.  There is also a material issue of fact as to executive control over the different companies.  Id.

14

at ¶ 7.  As there are numerous material issues of fact regarding the control of the companies, summary judgment is denied.

There exist material issues of fact regarding Innova's claim to pierce the corporate veil.  There are facts in dispute regarding the control of the companies, to what extent services were advertised together, the overlap of employees, and to what, if any, extent these companies acted in a "unity of interest."  Therefore, the Motion for Summary Judgment on the corporate veil claim is denied.

H.      Defendants' Breach of Contract (Counterclaim)

In the final portion of their Motion, the defendants argue that Innova materially breached both contracts.  See Mot. SJ at 43.  Additionally, the defendants assert that Innova was delinquent in its payments and, thus, in material breach of contract. Therefore, the defendants should be granted summary judgment.  Id. at 44.

Innova argues that the defendants failed to demonstrate that there are no genuine issues of material fact.  See Pltf's Opp'n at 23.  Innova is correct that there is no analysis of any of the elements of the breach of contract claim nor any citation to any law in support of the defendants' request − simply conclusory statements.  See id. at 23; Mot. SJ at 44.  Further, there are clear issues of material fact.  See, e.g., supra, Part IV.

The defendants fail to meet their burden for summary judgment as the movants. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  Summary judgment on the defendants' counterclaim for breach of contract is denied.

15

## V.    CONCLUSION

For the reasons stated above, the court denies the defendants' Motion for Summary Judgment (Doc. No. 146).  There are clearly substantial issues of material fact as to each of Innova's claims and the defendants' counter claims.


**SO ORDERED.**

Dated at New Haven, Connecticut this 24th day of March 2026.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge
